# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **IN RE:** | **CASE NO. 09-10539** |
| **MARK ALLEN JACKOWSKI** | **SECTION "B"** |
| **DEBTOR** | **CHAPTER 13** |

*****************************************************************

| | |
|---|---|
| **MARK ALLEN JACKOWSKI** | **ADV.P.NO. 09-01086** |
|     **PLAINTIFF** | |
| **VERSUS** | |
| **COMMISSIONER, INTERNAL** | |
| **REVENUE SERVICE** | |
|     **DEFENDANT** | |

## MEMORANDUM OPINION

This matter came before the Court on October 19, 2009 on the motion of the Commissioner of the Internal Revenue Service ("Commissioner") to dismiss Mark Allen Jackowski's ("Jackowski") adversary complaint for failure to state a claim upon which relief can be granted. For the reasons expressed, this court grants the motion to dismiss.

### I. Background Facts

In 2000, Mark Allen Jackowski settled claims against his employer involving personal injury and other claims that remain confidential due to the

nature of the agreement.[1] Mr. Jackowski took the position that the settlement was nontaxable under § 104 of the tax code as a claim involving personal injury. 26 U.S.C. § 104 (2006). Mr. Jackowski then invested the proceeds in an annuity to be paid out over several years.[2] He claimed the interest received on these annuities as taxable income, but not the principal. In 2004, the Internal Revenue Service (the "Commissioner") determined that the settlement was taxable and issued a notice of deficiency to Mr. Jackowski for 2002 taxes.[3] Mr. Jackowski challenged this determination in the United States Tax Court in 2004, arguing that the settlement proceeds should be considered nontaxable.[4] Two Tax Court cases were docketed to dispose of Mr. Jackowski's liability for the tax years 2002 and 2003.[5]

On October 12, 2005, while the cases were pending, the Appeals Division and Mr. Jackowski executed a closing agreement with respect to other years not before the Tax Court, both retrospectively and prospectively.[6] The closing agreement specifically applied to years 2000 and 2003 through 2010.[7] Mr.

---

[1] Compl. at ¶¶ 13-16.
[2] *Id.* at ¶ 16.
[3] *Id.* at ¶ 21.
[4] *Id.*
[5] *Id.* at ¶ 21, 27.
[6] *Id.* at ¶ 22-24.
[7] *Id.* Ex. A. The closing agreement specifically applied to the year 2003, which was docketed before the Tax Court at the time of the agreement.

Jackowski and the appeals team manager signed the agreement.[8] The Tax Court did not authorize or approve the closing agreement.[9]

The closing agreement is signed by the appeals team manager and Mr. Jackowski. On the reverse of the form there are two lines providing for the signature of a "[r]eceiving officer" and "[r]eviewing officer."[10] The field for the receiving officer is signed but the field for the reviewing officer is not.[11]

The cases pending before the Tax Court proceeded to final decisions after the closing agreement had been signed. The Commissioner and Mr. Jackowski settled the case pending before the Tax Court with respect to Mr. Jackowski's tax liability for tax year 2002.[12] The Tax Court accordingly entered a final decision in that case on October 26, 2005.[13] On October 2, 2006, the Tax Court entered a final decision regarding Mr. Jackowski's tax liability for 2003.[14]

On February 27, 2009, the debtor filed for bankruptcy under Chapter 13. The Commissioner filed Amended Proof of Claim 2-2 for unpaid taxes and penalties in the following amounts: $428,944.62 in secured claims for unpaid federal income

---

[8] *Id.*
[9] *Id.* at ¶ 24.
[10] *Id.* Ex. A.
[11] *Id.*
[12] *Id.* at ¶ 26.
[13] *Id.*
[14] *Id.* at ¶ 27.

taxes, $9,189.69 in priority unsecured claims for unpaid taxes, and $978.73 in general unsecured claims for penalties assessed prior to the date of petition.[15] On July 8, 2009, the debtor filed a complaint against the Commissioner to contest the validity of the closing agreement, to move the court to determine the debtor's tax liability pursuant to 11 U.S.C. § 505, and to disallow the Commissioner's amended proofs of claim. On October 19, 2009, the Commissioner moved to dismiss the debtor's complaint for failure to state a claim upon which relief can be granted.

## II. Legal Standard

Federal Rule of Civil Procedure 12(b)(6), incorporated into bankruptcy procedure by Federal Rule of Bankruptcy Procedure 7012(b), provides for dismissal of an action if the plaintiff cannot show any set of facts or possible theory consistent with the allegations in the complaint entitling him to relief.[16] "The question therefore is whether in the light most favorable to the plaintiff and with every doubt resolved in his favor, the complaint states any valid claim for relief."[17] In *Bell Atlantic Corporation v. Twombly*, the Supreme Court clarified the

---

[15] *Id.* at ¶ 9.
[16] *Ferrer v. Chevron Corp.*, 484 F.3d 776, 780 (5th Cir. 2007); *see also Vulcan Materials Co. v. City of Tehuacana*, 238 F.3d 382, 387 (5th Cir. 2001).
[17] *Lowrey v. Tex. A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir.1997) (quoting 5B CHARLES A. WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE, § 1357, at 601 (1969)).

plaintiff's burden when it announced "once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations of the complaint."[18] Accordingly, for purposes of this motion to dismiss, all facts alleged in Mr. Jackowski's complaint are accepted as true.

## III. Analysis

Mr. Jackowski's complaint contests the closing agreement on three grounds: 1) the closing agreement is invalid because it related to tax liabilities pending before the Tax Court, but was not presented to the Tax Court, 2) the closing agreement did not relate to specific items affecting other taxable periods, as required by 26 C.F.R. § 301.7121-1(b), and 3) the IRS failed to follow its own procedures in signing the closing agreement. None of the three grounds provide a basis to hold the closing agreement invalid.

### A. The Appeals Team Manager Had Authority To Enter into the Closing Agreement Finally Deciding Mr. Jackowski's Tax Liability for Tax Years 2000 and 2004 Through 2010.

Section 7121 of the Internal Revenue Code authorizes the Secretary "to enter into an agreement in writing with any person relating to the liability of such person (or of the person or estate for whom he acts) in respect of any internal revenue tax for any taxable period."[19] The subsection entitled "Finality" further provides:

---

[18] 550 U.S. 544, 563 (2007).
[19] 26 U.S.C. § 7121(a) (2006).

> If such agreement is approved by the Secretary (within such time as may be stated in such agreement, or later agreed to) such agreement shall be final and conclusive, and, except upon a showing of fraud or malfeasance, or misrepresentation of a material fact--
> (1) the case shall not be reopened as to the matters agreed upon or the agreement modified by any officer, employee, or agent of the United States, and (2) in any suit, action, or proceeding, such agreement, or any determination, assessment, collection, payment, abatement, refund, or credit made in accordance therewith, shall not be annulled, modified, set aside, or disregarded.[20]

Thus, when the Commissioner or his delegate signs and accepts such an agreement, it is final and conclusive as to both the taxpayer and the IRS.[21] Delegation Order 97 ("DO 97"), in turn, gives authority to Appeals Team Chiefs to sign and accept such an agreement on behalf of the Commissioner.[22] This authority also includes appeals team managers.[23] The closing agreement in this case was signed by an appeals team manager, who was an appropriate authority to sign and accept the agreement on the Commissioner's behalf.

The closing agreement purported to settle Mr. Jackowski's tax liability in years 2000 and 2003 through 2010, but at the time the closing agreement was executed the Tax Court already had cases pending with regard to Mr. Jackowski's

---

[20] *Id.* § 7121(b).
[21] *Miller v. IRS* (In re Miller), 174 B.R. 791 (9th Cir. BAP 1994), *aff'd* 81 F.3d 169 (9th Cir.1996) (citing 26 U.S.C. § 7121).
[22] D.O. No. 97 (Rev. 34 Aug. 18, 1997) 1997 WL 33479266.
[23] D.O. No. 66 (Rev. 15 Jan. 23, 1992) 1992 WL 12007248.

tax liability in 2002 and 2003.[24] Although the appeals team manager is authorized to sign and accept closing agreements, that authority does not extend to issues already docketed before the Tax Court. Under the terms of DO 97, the authority extends to "cases under [Appeals Team Chiefs'] jurisdiction (but excluding cases docketed before the United States Tax Court)."[25] This limitation is also reflected in 26 C.F.R. § 601.202(b), which provides that "a request for a closing agreement which determines tax liability may be submitted and entered into at any time before the determination of such liability becomes a matter within the province of a court of competent jurisdiction and may thereafter be entered into in appropriate circumstances when authorized by the court."[26] The closing agreement at issue in this case was not authorized by the Tax Court.[27]

The parties have not cited any cases dealing with the particular factual issue presented here: where a closing agreement settles several years of tax liability, but one of those years was already docketed in the Tax Court. The relevant case law establishes that such an agreement is effective to the extent that it resolves tax liabilities for tax years that are not pending before the Tax Court.

---

[24] Compl. at ¶ 22, 27, Ex. A.
[25] D.O. 97 ¶ 4.
[26] 26 C.F.R. § 601.202(b)
[27] Compl. at ¶ 24.

In *Webb v. Commissioner* the United States Tax Court dealt with a case that was somewhat similar factually.[28] In that case, the taxpayer had claimed distribution losses in tax years 1981 and 1982.[29] In 1985, the Commissioner disallowed the deductions for 1981, and issued a notice of deficiency.[30] The taxpayer contested the notice of deficiency in the Tax Court.[31] In 1988, while the case was pending, a revenue agent in the Los Angeles District Office notified the taxpayer that his tax return for 1982 had also been selected for examination, and offered to settle.[32] The revenue agent apparently had no knowledge of the case pending before the Tax Court regarding the taxpayer's liability for 1981.[33] As a result of this letter, the taxpayer and the Section Chief in the Los Angeles District Office entered into a closing agreement with respect to the taxpayer's tax liability for 1981.[34] No one notified the Tax Court that the case docketed before it had been settled by a closing agreement.[35] The Tax Court went to trial on the issue of the taxpayer's 1981 tax liability.[36] Neither the taxpayer nor the Commissioner brought

---

[28] *Webb v. Commissioner*, T.C. Memo. 1994-549, 1994 WL 591945 (1994), *aff'd without published opinion*, 68 F.3d 482 (9th Cir.1995).
[29] *Id*. at *1.
[30] Id. at *2.
[31] Id.
[32] Id.
[33] *Id*. at *3 n.6.
[34] *Id*.
[35] *Id*.
[36] *Id*.

the closing agreement to the court's attention.[37] In April 1991 the court entered a final decision in the case.[38] In December 1991, the taxpayer moved the court to vacate its decision because the prior closing agreement had obviated the issue before the court.[39]

The Tax Court, therefore, had to conclude whether the section chief had authority to enter into the agreement regarding the taxpayer's tax liability for a tax year already docketed before the Tax Court.[40] It examined the language in DO 97 to determine the precise limit of the delegated agent's authority. The section chief had authority to enter into closing agreements with respect to "cases under [his] jurisdiction (but excluding cases docketed before the United States Tax Court)."[41] Significantly, the court accepted the proposition that the section chief had authority to settle the taxpayer's liability for 1982, because only the taxpayer's liability for 1981 was pending in the case docketed in the Tax Court.[42] The taxpayer advanced a more expansive interpretation of the section chief's authority under DO 97: because the section chief had authority to settle liabilities regarding the taxpayer's liability relating to deductions in 1982, he necessarily also had authority to use a

---

[37] *Id.*
[38] *Id.*
[39] *Id.*
[40] *Id.* at *4.
[41] *Id.* at *5.
[42] *Id.*

closing agreement to resolve those same issues in the taxpayer's 1981 deductions.[43] The Tax Court disagreed. It observed that DO 97 clearly does not give the Commissioner's delegates authority to settle issues of tax liability for years pending before the Tax Court.[44] It accordingly held that "the closing agreement is invalid to the extent that it attempted to affect a tax year (1981) that was already before the Tax Court in a docketed case."[45]

Applying the principles of *Webb* to this case, Mr. Jackowski's closing agreement is valid to the extent that it resolves tax years not pending before the Tax Court. In this case, the closing agreement attempted to settle Mr. Jackowski's liability for tax years 2000 and 2003 through 2010.[46] At the time the closing agreement was executed the Tax Court already had cases pending with regard to Mr. Jackowski's tax liability in 2002 and 2003.[47] Like the closing agreement in *Webb*, the closing agreement in this case attempts to resolve a year that was already pending before the Tax Court—that of 2003. Both parties concede that the Tax Court's decision regarding Mr. Jackowski's tax liability for 2003 is *res judicata*. That, however, does not render the remainder of the closing agreement invalid. The decision in *Webb* contemplated this issue when it held that "the

---

[43] *Id.*
[44] *Id.*
[45] *Id.*
[46] Compl. Ex. A.
[47] *Id.* at ¶ 21, 27.

closing agreement is invalid *to the extent that* it attempted to affect a tax year (1981) that was already before the Tax Court in a docketed case."[48] Similarly, the closing agreement in this case is invalid only to the extent that it attempts to resolve tax liability from 2003. Mr. Jackowski and the appeals team manager, perhaps inadvertently, attempted to resolve a year that was already docketed before the Tax Court. But this should not vitiate the entire agreement, especially given Congress' clear intent to encourage finality through the use of closing agreements.[49]

Mr. Jackowski, arguing that the entire agreement should nevertheless be held null and void, relies upon the decision in *In re Klee*.[50] In that case, the taxpayer was contesting the disallowance of certain deductions and credits in United States Tax Court.[51] While the case was pending, the taxpayers entered into a closing agreement with a Chief of Appeals at the IRS.[52] The United States Bankruptcy Court for the District of Oregon held that the closing agreement was void.[53] The court reasoned that, under DO 97, the Chief of Appeals lacked authority to enter closing agreements with respect to issues pending before the tax

---

[48] *Webb*, 1994 WL 591945, at *5 (emphasis added).
[49] *See* H.R. REP. No. 2, 70th Cong., 1st Sess. 32 (1928) (aiming for finality in closing agreements so as to avoid the "constant reopening of closed cases")
[50] 216 B.R. 42 (Bankr. D. Or. 1997).
[51] *Id*. at 43-44.
[52] *Id*. at 44.
[53] *Id*.

11

court. Because the Chief of Appeals lacked authority to enter into the closing agreement it was void.[54]

None of the cases cited by the debtor suggest that the entire closing agreement should be held null and void when only part of the agreement pertains to issues pending before the Tax Court. In *Klee*, the Chief of Appeals and the taxpayer entered into a closing agreement with respect to specific deductions for a certain tax year that were pending before the Tax Court.[55] Here, by contrast, the issue before the Tax Court was the debtor's challenge of the IRS's proposed deficiency assessment for the years 2002 and 2003. The closing agreement, by its express terms, did not apply to 2002, and the parties are in agreement that the closing agreement is invalid to the extent that it attempts to resolve the taxpayer's liability for 2003. The remainder of the closing agreement covering years 2000 and 2004 through 2010, however, remains valid.

### B. The Closing Agreement Relates to Specific Items Affecting Other Taxable periods

Mr. Jackowski also argues that the closing agreement is void because it does not relate to specific items affecting other taxable periods. Generally, the

---

[54] *Id.*; *See also Stiskin v. Commissioner*, T.C.M. (RIA) 96,306, 1996 WL 377047 (1996) ("Since the case was already docketed in the Tax Court when the closing agreement was signed, the Associate Chief of Appeals here did not have authority to sign the closing agreement on behalf of the Commissioner.")
[55] *See Klee*, 216 B.R. at 43-44.

Commissioner or his delegate may enter into closing agreements relating to the liability of a taxpayer regarding any internal revenue tax for any taxable period. 26 U.S.C. § 7121(a) (2006). The regulatory provisions limit this authority with respect to agreements resolving the taxpayer's liability for a prior or subsequent tax year. With respect to taxable periods ended prior to the date of the closing agreement the Code of Federal Regulations provides:

> [c]losing agreements with respect to taxable periods ended prior to the date of the agreement may relate to the total tax liability of the taxpayer or to one or more separate items affecting the tax liability of the taxpayer, as, for example, the amount of gross income, deduction for losses, depreciation, depletion, the year in which an item of income is to be included in gross income, the year in which an item of loss is to be deducted, or the value of property on a specific date.[56]

With respect to the taxable periods ending subsequent to the date of the closing agreement, the regulations provide that "[c]losing agreements with respect to taxable periods ending subsequent to the date of the agreement may relate to one or more separate items affecting the tax liability of the taxpayer."[57]

These regulations basically provide that the Commissioner's delegates have a different scope of authority depending on whether they are resolving past years

---

[56] 26 C.F.R. § 301.7121-1(b) (2009).
[57] *Id.*; *see also* D.O. 97 ¶ 5 (delegating authority to "enter into and approve a written agreement with any person relating to the tax liability of such person . . . for a taxable period or periods ended prior to the date of the agreement and related specific items affecting other taxable periods.").

or future years. With respect to past years, the closing agreement may relate to a discrete issue of tax liability for that year, or taxpayer's total tax liability for that year.[58] With respect to future years, the closing agreement may relate to a discrete issue of tax liability, but it may not relate to the taxpayer's total tax liability for a future year.[59] This rule makes sense because resolving a taxpayer's total tax liability for a future year would require the Commissioner's delegates to speculate as to future events. This is consistent with other provisions concerning the proper execution of closing agreements concerning future tax years. For example, Revenue Procedure 68-16 states "[d]eterminations should not attempt to fix tax treatment for future years where correct treatment will depend primarily on circumstances that will arise subsequent to the agreement."[60] Thus, the Commissioner's delegates have authority to resolve tax liabilities—past or future—as long as the agreement pertains to specific items.[61]

The closing agreement in this matter conforms to the requirements of 26 C.F.R. § 301.7121-1 because it pertains to two specific items. Section 301.7121-1 provides a list of examples of specific items, which includes "the amount of gross income" and "the year in which an item of income is to be included in gross

---

[58] *See* 26 C.F.R. § 301.7121-1(b)(2).
[59] See *id.* § 301.7121-1(b)(2).
[60] Rev. Proc. 68-16, 1968-1 C.B. 770, 787.
[61] 26 C.F.R. § 301.7121-1.

14

income."[62] The closing agreement in this case resolves two specific items: the amount of Mr. Jackowski's gross income, and the year in which an item of Mr. Jackowski's item of income is to be included in gross income. All of the provisions of the closing agreement pertain to the proceeds of Mr. Jackowski's settlement with his former employer.[63] Because Mr. Jackowski elected to receive his settlement over the course of several years, it was also necessary for the Commissioner to determine the years in which this item of income was to be included in Mr. Jackowski's gross income.[64] The closing agreement effectuated the resolution of both of these specific items, and was therefore a proper closing agreement with respect to both past and subsequent tax years.

Mr. Jackowski urges a different interpretation of these regulations. Mr. Jackowski's interpretation focuses on the illustrative example offered in the Treasury Regulations.[65] The example pertains to a taxpayer's past transaction involving the acquisition of shares in a corporation, which in turn would have an

---

[62] *Id.*

[63] Compl. Ex. A.

[64] *Id.*

[65] Mr. Jackowski also adverts to a Chief Counsel advisory letter that presents a restrictive view of the Commissioner's authority to enter into closing agreements with respect to future years. IRS CCA 200802031, 2008 WL 109498 (I.R.S. CCA 2008). Such letter rulings are not to be cited as precedent. 26 U.S.C. 6110(k)(3); *Transco Exploration Co. v. C.I.R.*, 949 F.2d 837, 840 (5th Cir.1992). In any event, the letter ruling is not relevant to the facts presented in this case. *See id.*

effect on the taxpayer's income in future years.[66] It is true that the circumstances of Mr. Jackowski's closing agreement are factually distinguishable from the illustrative example. But there is no meaningful distinction between the illustrative example and the present case. The tax consequences of a settlement of a past personal injury claim and the tax consequences of a past transaction in stock are both matters that are beneficially resolved through the execution of a closing agreement

### C. The Agreement Is Valid Notwithstanding the Fact That It Was Not Signed by a Reviewing Officer.

Mr. Jackowski contends that because the Commissioner failed to follow internal procedures of the IRS in executing the closing agreement, it is void. In particular, Mr. Jackowski points to the fact that the form is not signed by a reviewing officer, as required by the Internal Revenue Manual (IRM). The IRM provides:

> The examining officer (or team coordinator or team manager, as appropriate) must sign and date the reverse side of the Form 906, Closing Agreement on Final Determination Covering Specific Matters, in the space provided, as Receiving Officer. The reviewer, or if absent a designated alternate or the reviewer's supervisor must also sign, as Reviewing Officer. Each copy of the closing agreement to be retained by the service should reflect these. However, only one original need be signed. Additional copies may be made and attached to the other retained forms. If computer generated or completely typed

---

[66] 26 C.F.R. § 301.7121-1(b)(4).

16

> forms are used, a similar receiving and reviewing page must be included with each copy. The reviewer should also complete and attach to the file a checklist, for each agreement to assist in the review.[67]

The procedures in the IRM, however, are not binding on the IRS and its provisions do not give rights to taxpayers.[68] This interpretation was demonstrated in the decision of the United States Court of Appeals for the Fifth Circuit in *Selgas v. Commissioner.* In *Selgas*, a taxpayer challenged the validity of a notice of deficiency because the notice was signed by a Supervisory Program Analyst.[69] The taxpayer argued that the analyst lacked authority to sign the notice pursuant to internal operating procedures of the IRS.[70] The Fifth Circuit rejected the taxpayer's contention, finding that IRS internal operating procedures confer no rights on individual taxpayers.[71] Rather, the court held that the relevant requirements are imposed by the statute, which did not specify the particular form of notice.[72]

In this case, Mr. Jackowski similarly seeks to use the Commissioner's internal operating procedures offensively against the Commissioner. Section

---

[67] IRM § 8.13.1.4.2.4 (2007) *available at* http://www.irs.gov/irm/part8/irm_08-013-001-cont01.html#d0e1931.
[68] *First Federal Savings and Loan Assn. of Pittsburgh v. Goldman*, 644 F. Supp. 101, 102 (W.D. Pa. 1986).
[69] 475 F.3d 697, 699 (5th Cir. 2007), *cert denied*, 552 U.S. 824 (2007).
[70] *Id.* at 699.
[71] *Id.* at 699-700.
[72] *Id.* at 700.

8.13.1.4.2.4 of the IRM requires an examining officer or team manager to sign the reverse side of the form, but this does not provide a basis for a taxpayer to invalidate an agreement. The IRM forbids this result by providing, with regard to closing agreements, "[t]he information contained in this IRM pertaining to the interpretation and application of IRC 7121 is advisory only and is not to be cited or relied upon as authority in disposing of issues."[73] Thus, as in *Selgas*, the IRS' internal operating procedures do not provide Mr. Jackowski an enforceable right against the Commissioner.[74] Only the statute does. The statute provides that a closing agreement entered into by the Secretary and approved by the Secretary is final, and may only be invalidated upon a showing of fraud, malfeasance, or misrepresentation of a material fact.[75] There is no such showing or even allegations in this matter so the closing agreement is final and cannot be invalidated by Mr. Jackowski.

## IV. Conclusion

For the foregoing reasons, the defendant's motion to dismiss is granted.

New Orleans, Louisiana, April 13, 2010.

_____
Jerry A. Brown
U.S. Bankruptcy Judge

---

[73] *Id.* § 8.13.1.1.
[74] *Selgas*, 475 F.3d 697 at 699-700.
[75] 26 U.S.C. § 7121.